### AMERICAN SUGAR REFINING CO. v. RICKINSON et al.

(District Court, S. D. New York. January 28, 1903.)

1. SHIPPING—DAMAGE TO SUGAR CARGO—UNSEAWORTHINESS OF VESSEL.

Sugar cargo stowed in a hold was damaged during a voyage by seawater, which leaked from a water-ballast tank, through a manhole, opening into the hold. After the vessel sailed, the valve admitting water to the tank was opened, and negligently allowed to remain open longer than necessary to fill the tank, and it was during the time it was so open that the leak was discovered. But it appeared that while in port the manhole cover had been taken off and replaced, and it was not shown that before sailing it was tested with such pressure as it was afterward subjected to. *Held*, that the damage must be attributed to the unseaworthy condition of the vessel at the commencement of the voyage, due to negligence, for which the owners were not exempted from liability by the Harter act (27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]).

In Admiralty. Action for damage to cargo.

Wing, Putnam & Burlingham, for libellant.

Convers & Kirlin, for respondents.

ADAMS, District Judge. This action is to recover alleged damages of $3,000 on the libellant's cargo of sugar laden in good order on the respondents' steamer "Albion," in Java during August, 1900, and discharged in New York in October, 1900. Three hundred and eighty-two packages were said to be partly empty and twenty-two entirely empty. The loss is attributable to the vessel's unseaworthiness, caused by a flow of sea water into the No. 3 hold, where the sugar in question was stowed, through a man-hole, opening into the No. 4 water ballast tank below. There were two man-holes opening into the tank in question, one on each side of the vessel. One of these holes was found to be leaking seriously after the voyage commenced at Java. When the vessel was loaded, the top of the tank was about 17½ feet below the water line.

The steamer started from Java about 6 o'clock in the morning. Some time after sailing, probably between 7 o'clock and 9 o'clock in the morning, the valve of the pipe leading into No. 4 tank was

¶ 1. Statutory exemption of shipowners from liability, see note to Lloyd v. Insurance Co., 49 C. C. A. 11.

opened for the purpose of filling the tank and from some neglect it was left open until about 3:30 o'clock in the afternoon, when leakage was discovered and traced to the tank. The valve was then closed. Two hours would have sufficed to fill the tank.

The point in controversy is whether the owners exercised due diligence to make the vessel seaworthy, by causing sufficient strength to be given to the man-hole joint to resist the pressure caused by the entrance of the sea water. The owners had supplied all necessary appliances to make the vessel tight, if the valve governing the flow of water remained closed. The action of the crew after sailing set the cause of the leak in operation and if a proper examination, in conformity with the requirements of the Act (27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]), was made before sailing, the defence of the respondents would be established. There is no sufficient proof, however, to satisfy such requirements. It appears that the carpenter of the ship, while in Java, lost his sounding rod and took off the man-hole cover in order to search for it in the tank. He testified that after doing so, he made the joint tight, so that there was no leakage, as appeared by the fact that the tank had been filled in port before sailing without developing any. Even if the carpenter's testimony in this respect is to be accepted, it still is not satisfactorily shown that the tank had been subjected to the amount of pressure, which afterwards caused the leak. The necessary conclusion from the facts is, that the carpenter failed to make a good joint, so that the ship started on her voyage in an unseaworthy condition, in the sense that the joint was not sufficient to resist the pressure caused by the opening of the valve to the tank. It was necessary that the joints should be strong enough for this purpose and in neglecting to see that they were so, before the vessel sailed, the owners failed in their duty and the Act affords no protection to them. I do not give much weight to the respondents' argument that the negligent allowance of several hours pressure was the cause of the leakage and the respondents are relieved because it was mismanagement of the ship's appliances by those on board during the voyage. It does not appear when after sailing, the leakage commenced. It can not be assumed for the respondents' benefit that the leakage occurred, as contended, after the pressure existed for several hours, tending to make the fault one of management. The fault was that the respondents failed to exercise due diligence while the vessel was still in port to make her in all respects seaworthy. The Manitoba (D. C.) 104 Fed. R. 145; International Nav. Co. v. Farr & Bailey Mfg. Co., 181 U. S. 218, 21 Sup. Ct. 591, 45 L. Ed. 830.

Decree for libellant with order of reference.